EWERT *v.* BLUEJACKET, A WIDOW, ET AL.

BLUEJACKET, A WIDOW, ET AL. *v.* EWERT.

APPEALS FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

Nos. 173, 186.   Argued March 17, 1922.—Decided May 15, 1922.

1. An attorney at law who is employed at the expense of the United States, by and under the direction of the Attorney General, as a special assistant, to assist in the institution and prosecution of suits to set aside deeds of allotted Indian lands, at an Indian Agency, his official duties requiring all of his time, is " a person employed in Indian affairs " within the meaning of Rev. Stats., § 2078, forbidding such persons to " have any interest or concern in any trade with the Indians, except for and on account of the United States." P. 135.

2. The section covers not only trade carried on with the Indians as a business, but also an individual purchase of an Indian's land allotment. P. 137.

3. A deed taken in violation of this section is void, passing the legal title only; and neither the state statute of limitations nor the doctrine of laches applies to a suit brought in the District Court against

the grantee by the Indian owners to set the transaction aside; and they are entitled to indemnity against mortgages made by the grantee as well as to a reconveyance. P. 137.

4. So *held* where the land bought by the attorney was not involved in the litigation about which he was employed, and was deeded to him, with the approval of the Secretary of the Interior, pursuant to a public advertised sale of the tract, conducted after appraisement and otherwise pursuant to the rules and regulations of the Department, under the act (32 Stat. 245, 275) authorizing sale of restricted allotments by the heirs of allottees, and after the proposed sale, as to interests of minor heirs, had been approved by the proper state court upon petition of their guardian.

5. An error made by the Interior Department in the interpretation of the statute cannot confer legal rights inconsistent with its express terms. P. 138.

265 Fed. 823, affirmed in part and reversed in part.

APPEAL from a decree of the Circuit Court of Appeals in part affirming and in part reversing a decree of the District Court dismissing the bill in a suit brought by the heirs of an Indian to set aside a deed of his restricted land allotment, which they had made to the appellant, with the approval of the Secretary of the Interior, pursuant to a public sale, under the act of Congress and departmental regulations governing such transactions. The facts are more fully stated in the opinion of the court below.

Mr. *Arthur S. Thompson* for Bluejacket et al.

Mr. *Paul A. Ewert* pro se. Mr. *Henry C. Lewis* and Mr. *W. H. Kornegay* were also on the briefs.

The history of § 2078, Rev. Stats., and the rules, regulations and practice of the Secretary of the Interior with regard to it, clearly show that the section was not intended and should not be construed to embrace transactions of the kind here involved.

Both before and after the purchase in question its legality was considered and approved by the Attorney General and the Secretary of the Interior.

It was a fundamental error to treat the sale as a transaction directly between Ewert and the Indians rather than as a sale made to him by the United States, acting as their guardian.

Ewert's employment was strictly legal and under the Department of Justice. He was not employed in Indian affairs, nor an "officer" of the Indian Department. *United States* v. *Germaine,* 99 U. S. 508.

The statute is highly penal and should be strictly construed, and it cannot have one construction for criminal, and another for civil, cases.

"Employed in Indian affairs" means "employed in the office of Indian affairs," within the meaning of the Revised Statutes.

It is at least not clear that Congress in revising § 14 of the Act of 1834, 4 Stat. 738, intended, by the expression "employed in Indian affairs," anything wider than the expression "employed in the Indian department," as used in the original act.

The broad construction contended for would bring the employees of every department of the Government within this section. Contrast the specific inhibition against any agent or employee of the Government having any interest in contracts respecting supplies, found in 1st Supp. Rev. Stats., p. 67, § 10.

Special assistants to the Attorney General are a means provided by Congress for meeting emergencies in the service which cannot be foreseen or do not warrant a recurring and individual annual appropriation, such as is made for the regular and permanent staff. They may be employed for one day or indefinitely, in one kind of service or another. Their compensation is wholly a matter for the Attorney General. Their services not only terminate at his pleasure, but with the conclusion or suspension of the particular work for which they are employed.

Because of these characteristics, which place them upon a plane with other persons who are sporadically and ephemerally employed by the heads of departments to perform various kinds of service, commonly called "piece work," these attorneys are held not to come within the various statutes, which, for one reason or another, restrict officers and employees in commercial transactions and private services. And the reasons are quite obvious: On the one hand an impairment of the service by the prohibited acts could not well be predicated of the fleeting and precarious duration of their services. On the other, it would often be difficult to secure such services if Congress were so to restrict them, for the gain would often not compensate for the restraints. Citing letters of the Attorney General to Charles R. Bosworth, May 8, 1917, and to Robert W. Childs, December 28, 1914. These opinions are necessarily a construction of the act under which appellant was employed. See also 26 Ops. Atty. Gen. 247; *United States* v. *Rosenthal*, 121 Fed. 862; *United States* v. *Virginia-Carolina Chemical Co.*, 163 Fed. 66.

There is absolutely no proof of Ewert's work in "Indian affairs." There is not a single word of testimony showing that Ewert ever did in fact institute a single suit to set aside the deeds concerning which he was employed. Outside of the record, the appellant admits that there were, at the time of his appointment, already pending, eight suits theretofore filed by the United States, having for their purpose the setting aside of certain deeds to certain Indian lands, however, not Quapaw Indian lands, made by the United States marshal for Indian Territory under the direction of the Territorial United States Court for Indian Territory, in certain partition proceedings. The suits were instituted by the Government. The Indians were never consulted. The lands were located in the former reservations of the Shawnee, Ottawa and Seneca

Indians.  They were not located in the reservation of the
Quapaw Indians, out of which Charles Bluejacket received
his allotment.

The point here desired to be directed to the attention of
the court is that, under the terms of Ewert's employment,
he was not in fact performing any services or engaged in
Indian affairs of any kind, in so far as they affected the
tribe of Indians known as Quapaw Indians, of which
Charles Bluejacket was an allottee.

The court erred in not holding that the approval by the
Secretary of the Interior, the Attorney General and the
Commissioner were departmental constructions in appel-
lant's favor of all controlling statutes, and in not follow-
ing that construction, and in not holding that § 2078 does
not apply to real estate transactions.

The removal of the restrictions by the terms of the
statute, and the selling of the land with the approval of
the Secretary of the Interior, had the effect of taking the
transaction out of the law prohibiting trade with Indians.

In holding that the deed to Ewert is void the court
fixes an additional penalty not provided in the statute and
not intended by the lawmaking power.  *Dunlap* v. *Mer-
cer,* 156 Fed. 545; *Connolly* v. *Union Sewer Pipe Co.,* 184
U. S. 540.

The conveyance cannot be impugned by the grantor
and his heirs.  The sovereign alone can object.

MR. JUSTICE CLARKE delivered the opinion of the court.

We have here cross appeals in a suit to have declared
invalid a deed to Paul A. Ewert for restricted lands in-
herited by the widow and adult and minor heirs of Charles
Bluejacket, a full-blood Quapaw Indian, and for an ac-
counting for rents and royalties derived from such lands.

On October 23, 1908, Ewert was appointed a special
assistant to the Attorney General of the United States to

" assist in the institution and prosecution of suits to set
aside deeds to certain allotments in the Quapaw Indian
Agency," and by the terms of his appointment his official
residence was fixed at Miami, Oklahoma. He testifies
that he took the oath of office on the 10th of November,
1908, and about December 1st opened an office at Miami.
In his answer he alleges that he made his first bid for the
land involved on December 21, 1908, within a month after
his arrival at his post; that a second bid was made by him
on January 25, 1909, and a third on February 22, 1909,
all of which were rejected because less than the appraise-
ment. On March 29, 1909, he made a bid of $5,000 for
the land, which was accepted. The deed he received was
dated April 8, 1909, and was approved by the Secretary
of the Interior on July 26th following.

Charles Bluejacket, the ancestor of the vendors, was a
full-blood Quapaw Indian and as such received a patent
for the lands involved, dated September 26, 1896, which
provided—pursuant to 28 Stat. 907—that the land should
be " inalienable for a period of twenty-five years " from
and after the date of the patent. Thus the restraint on
alienation did not expire until September 26, 1921, and
it ran with the land, binding the heirs precisely as it
bound the ancestor. *United States* v. *Noble,* 237 U. S.
74, 80.

Congress provided, in 1902 (32 Stat. 245, 275), that
adult heirs of a deceased Indian might sell and convey
full title to inherited lands free from restrictions, but only
by conveyances approved by the Secretary of the Interior,
and that the interests of minor heirs might also be so sold
and conveyed upon petition of a guardian, on order of a
proper court and when the sale was approved by the
Secretary of the Interior. Under this statute the lands
in controversy were sold in the public manner required by
the rules of the Department of the Interior and for the

purposes of this decision all required action is assumed to have been, in form, properly taken.

The ground upon which the validity of the conveyance to Ewert is assailed is that Rev. Stats., § 2078, rendered it unlawful for him to become a purchaser of Indian lands while holding the position which he did as a Special Assistant to the Attorney General " to assist in the institution and prosecution of suits to set aside deeds to certain allotments in the Quapaw Indian Agency " and that, therefore, the deed to him was void.

Revised Statutes, § 2078, reads: " No person employed in Indian affairs shall have any interest or concern in any trade with the Indians, except for, and on account of, the United States; and any person offending herein, shall be liable to a penalty of five thousand dollars, and shall be removed from his office."

The District Court held that Ewert was not so employed in Indian affairs as to come within the scope and condemnation of the statute and dismissed the bill. On appeal, the Circuit Court of Appeals held that he came within the statute and reversed the decree of the District Court as to the minor heirs but affirmed it as to the adult heirs on the ground that they were guilty of such laches in delaying bringing suit from the date of the deed in 1909 to 1916 that their cause of action was barred. The case is here for construction of this act of Congress.

It is argued that when the land was purchased by Ewert he was not " employed in Indian affairs " within the meaning of Rev. Stats., § 2078, which, it is contended, includes only " Officers of Indian Affairs," provided for in Rev. Stats., Title XXVIII, and its amendments.

The section is derived from the Act of June 30, 1834, c. 162, § 14, 4 Stat. 738, which declared that " No person employed in the Indian department shall have any interest or concern in any trade with the Indians," etc. The substitution of " employed in Indian affairs," used in the

section of the Revised Statutes for " employed in the Indian department," used in the prior act, was plainly intended to enlarge the scope of the provision so that it should include all persons employed in Indian affairs, even though they might not be on the roll of the Indian department which is really only a bureau of the Interior Department.

The purpose of the section clearly is to protect the inexperienced, dependent and improvident Indians from the avarice and cunning of unscrupulous men in official position and at the same time to prevent officials from being tempted, as they otherwise might be, to speculate on that inexperience or upon the necessities and weaknesses of these " Wards of the Nation." *United States* v. *Hutto, No. 1,* 256 U. S. 524, 528.

Since the Act of June 22, 1870, c. 150, 16 Stat. 164, carried into Rev. Stats.; § 189, no head of any department of the Government has been permitted to employ legal counsel at the expense of the United States, but whenever such counsel is desired a call must be made upon the Department of Justice, by which it is furnished. In this case, as we have seen, Ewert was specially employed and detailed by the Attorney General, not only to devote himself to Indian affairs but specifically to institute and prosecute suits relating to lands of the Quapaw Indians, with which we are here concerned, and he himself testifies that during his employment he devoted all of his time to such official duties. He was thus employed to give, and he testifies that at the time of this purchase he was giving, all of his time to the affairs, not of the Indians in general, but to matters relating specifically to the titles of the lands of the Quapaw allottees. If he had been employed by the Secretary of the Interior or by the Commissioner of Indian Affairs to perform the same service no refinement could have suggested the inapplicability to him of the statute, and the fact that under the form of departmental organi-

zation of the government provided for by statute he was under the general direction of the Department of Justice at the time can make no difference.

We fully agree with the Circuit Court of Appeals that Ewert was employed in Indian affairs within the meaning and intendment of the act when he purchased the land.

It is next contended that the " trade with the Indians " in which persons employed in Indian affairs were prohibited by the section from engaging must be confined to trade with them when conducted as a business or occupation—to merchants or dealers supplying the Indians with the necessities or conveniences of life. Having regard to the purpose of the statute, as we have stated it, we think that no such narrow interpretation can be given to the section. Congress can not have intended to prohibit the use of official position and influence for the purpose of overreaching the Indians in the selling to them of clothing or groceries and to permit their use in stripping them of their homes and lands. In *United States* v. *Douglas,* 190 Fed. 482, the Circuit Court of Appeals for the Eighth Circuit declined to allow precisely such a construction as it is contended should be here given to the section and ruled that the purchase of cattle by an industrial teacher of Indians came within its terms. This decision was rendered over ten years ago and if it had been deemed an erroneous construction of the act, Congress would no doubt have long since modified it. Again we agree with the Circuit Court of Appeals that the land was acquired by Ewert in trade with the Indians, within the meaning of the section.

The Circuit Court of Appeals upon the construction of the statute, with which we thus agree, held the sale to Ewert invalid as to the minor Indian heirs, but, while properly regarding the limitation statutes of Oklahoma as inapplicable, held the adult heirs were barred by laches in failing for seven years to institute suit after delivery of the deed to the land. In this the court fell into error.

" The general rule of law is that an act done in violation of a statutory prohibition is void and confers no right upon the wrongdoer." *Waskey* v. *Hammer,* 223 U. S. 85, 94, and cases cited. The qualifications of this rule suggested in the decisions are as inapplicable to this case as they were to the *Waskey Case.* The mischief sought to be prevented by the statute is grave and it not only prohibits such purchases but it renders the persons making them liable to the penalty of the large fine of $5,000 and removal from office. Any error by the department in the interpretation of the statute can not confer legal rights inconsistent with its express terms. *Prosser* v. *Finn,* 208 U. S. 67.

The purchase by Ewert being prohibited by the statute was void. *Waskey* v. *Hammer, supra.* He still holds the legal title to the land and the equitable doctrine of laches, developed and designed to protect good faith transactions against those who have slept upon their rights, with knowledge and ample opportunity to assert them, cannot properly have application to give vitality to a void deed and to bar the rights of Indian wards in lands subject to statutory restrictions. *Galliher* v. *Cadwell,* 145 U. S. 368, 372; *Halstead* v. *Grinnan,* 152 U. S. 412, 417, and *Northern Pacific Ry. Co.* v. *Boyd,* 228 U. S. 482, 500.

It is alleged in the petition, and not denied, that Ewert encumbered the lands involved with a mortgage and against it indemnification is prayed for, which should be granted if the lien still subsists.

It results that the decree of the Circuit Court of Appeals will be affirmed as to the minor heirs and that as to the adult heirs it must be reversed and the cause remanded to the District Court for an accounting and for further proceedings in conformity with this opinion.

*Affirmed in part.*
*Reversed in part and remanded.*