**SCHAGHTICOKE TRIBE OF INDIANS et al.**

v.

**KENT SCHOOL CORPORATION, INC., et al.**

**Civ. No. H–75–125.**

United States District Court, D. Connecticut.

Dec. 1, 1976.

As Modified Dec. 9, 1976.

---

1. *United States v. Tucker*, 404 U.S. 443, 448, 92 S.Ct. 589, 592, 30 L.Ed.2d 592, 597 (1972).

David C. Crosby, Dennis M. Montgomery, Thomas N. Tureen, Calais, Me., Robert J. Nicola, Bridgeport, Conn., for plaintiffs.

Charles H. Dyer, John Crosskey, Day, Berry & Howard, Hartford, Conn., Walter F. Torrance, Jr., William B. Fitzgerald, Jr., Carmody & Torrance, Waterbury, Conn., for defendants.

## RULING ON MOTION TO AMEND ANSWER

BLUMENFELD, District Judge.

This suit is brought by the Schaghticoke Tribe of Indians and by certain individuals on behalf of themselves and other tribe members to regain possession of several hundred acres of land located in the Town of Kent. Plaintiffs claim that these lands were alienated in violation of the Indian Nonintercourse Act, 25 U.S.C. § 177. In addition, plaintiffs maintain that with respect to certain parcels, the lands were taken in violation of Connecticut state law. Conn.Gen.Stat.Ann. § 47–60. The various defendants answered the complaint in July 1975. In this motion, filed May 21, 1976, defendants [1] seek leave of court to amend their answer in order to assert affirmative defenses of laches (Third Defense), statute of limitations (Fourth Defense), marketable title statute (Fifth Defense), adverse possession (Sixth Defense), and waiver and estoppel (Seventh and Eighth Defenses). Plaintiffs oppose the motion and contend (1) that defendants waived the defenses, and (2) that the defenses are insufficient as a matter of law to bar recovery.

### Waiver

While defendants delayed approximately ten months in filing these proposed amendments, they requested plaintiffs' consent to the changes as early as January 1976. Fed.R.Civ.P. 15(a) dictates that "leave [to amend] shall be freely given when justice so requires." As Professor

---

1. Defendants Town of Kent and Connecticut Light and Power Company do not join in this motion.

Moore notes, "the mere fact that an amendment is offered late in the case is not enough to bar it if the other party is not prejudiced." 3 J. Moore, *Federal Practice* ¶ 15.08(4), at 901 (2d ed. 1974). The only prejudice that plaintiffs claim is that they will be forced to respond to additional defenses and undertake supplemental discovery. This prejudice is inherent in any amendment to an answer which lists additional defenses. The prejudice in no way relates to the disputed delay. It appears also that the assertion of these defenses based on the passage of time came as no great shock to the plaintiffs. In the absence of any showing of undue prejudice, I would be reluctant to find a waiver of these defenses on defendants' behalf. *Middle Atlantic Utilities Co. v. S.M.W. Development Corp.*, 392 F.2d 380 (2d Cir. 1968); *Applied Data Processing, Inc. v. Burrough's Corp.*, 58 F.R.D. 149 (D.Conn.1973).

### Legal Sufficiency

■ As noted above, leave to amend a pleading is ordinarily granted with great liberality. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). If the amended defenses are legally insufficient so as to invite a motion to strike under Rule 12(f), however, it would serve no purpose to allow the amendment over plaintiffs' objections. Were I to grant defendants' motion, plaintiffs would immediately move to strike the defenses.[2] The resolution of these issues now could greatly simplify discovery and trial and aid in a quick disposition of the case. The presentation of the defenses at trial, if legally insufficient, would be extremely prejudicial to plaintiffs. The questions on the merits of these additional defenses have been amply briefed and ably argued. Judicial economy and the interests of justice require that if there exists no set of facts under the amendments which would constitute a valid and sufficient defense to plaintiffs' claims, leave to amend should be denied. 3 J. Moore, *Federal Practice* ¶ 15.08(4), at 905; *Horwitt v. Movado Watch Agency, Inc.*, 62 F.R.D. 5 (S.D.N.Y. 1974).

### A. Federal Claims

■ Defenses Three through Seven[3] all deal with the extraordinary passage of time between the alleged violative alienations and the bringing of this suit. The wrongful takings in this case date back as far as 1801 and 1811. Defendants assume for the purposes of this motion that the Nonintercourse Act applies to these transactions.[4] By way of confession and avoidance, they seek to assert defenses of laches, statute of limitations, Cor...iecticut marketable title law, adverse possession, and waiver and estoppel. Plaintiffs, relying on the trust relationship between the Indians and the United States and the protections implicit in the Nonintercourse Act itself, argue that these defenses cannot preclude recovery.

■ It is beyond dispute that were the United States suing as a party plaintiff for the benefit of the tribal members, none of the above defenses would have legal merit. *Board of Commissioners v. United States*, 308 U.S. 343, 351, 60 S.Ct. 285, 84 L.Ed. 313 (1939); *United States v. Schwarz*, 460 F.2d 1365, 1371–72 (7th Cir. 1972); *United States v. Ahtanum Irrigation District*, 236 F.2d 321, 334 (9th Cir. 1956), *cert. denied*, 352 U.S. 988, 77 S.Ct. 386, 1 L.Ed.2d 367 (1957); *United States v. 7,405.3 Acres of Land*, 97 F.2d 417, 422–23 (4th Cir. 1938); *Walker River Paiute Tribe v. Southern Pacific*

---

**2.** Plaintiffs' attorneys have already made a Rule 12(f) motion to strike affirmative defenses based on the passage of time in a similar action for possession by an Indian tribe. *Western Pequot Tribe of Indians v. Holdridge Enterprises, Inc.*, Civil No. 76–193 (D.Conn.).

**3.** Plaintiffs do not contend that the Eighth Defense of waiver and estoppel is insufficient as a matter of law. Unlike the Seventh Defense, this defense is based on certain transactions

predating the passage of the initial Nonintercourse Act in 1790. Plaintiffs maintain that the validity of the defense depends on whether the Colony of Connecticut approved the transfers. The issue of such approval is a fact contested between the parties. Plaintiffs' Opposition to Motion to Amend Answer, 2 at n. 1.

**4.** Cf. *Joint Tribal Council of Passamaquoddy Tribe v. Morton*, 528 F.2d 370 (1st Cir. 1975).

*Transportation Company*, Civil No. R–2707 (D.Nev. May 28, 1974), *aff'd in part, rev'd in part, sub nom., United States v. Southern Pacific Transportation Company*, 543 F.2d 676 (9th Cir. 1976); *United States v. McGugin*, 31 F.Supp. 498, 505 (D.Kan.1940); *United States v. Raiche*, 31 F.2d 624, 628 (W.D.Wis.1928). The only question is whether a different result should be reached in this case where the Indians sue on their own behalf. Faced with a similar issue in *Narragansett Tribe of Indians v. Southern Rhode Island Land Development Corp.*, 418 F.Supp. 798 (D.R.I.1976), Judge Pettine ruled that these delay-based defenses were not available in actions by Indians to recover lands alienated in violation of the Nonintercourse Act. I concur in Judge Pettine's analysis and deny leave to amend here.

■ This result is mandated by the federal sovereign interests at stake and the necessary supremacy of federal law over state statutes. Prior to the alienations in question, the Indians claimed a right of occupancy in the disputed territories good against all but the sovereign, in whom the fee was vested. The Supreme Court made emphatically clear in *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 670, 94 S.Ct. 772, 778, 39 L.Ed.2d 73 (1974), that "Indian title is a matter of federal law and can be extinguished only with federal consent." In recovering these lands, the Indians assert not merely their own rights of occupancy, but the sovereign claims of the United States as well. State notions of limitations or laches cannot destroy the federal guardianship in the territory. Because of this guardianship the Indians' property "becomes an instrumentality of the government for the accomplishment of a proper government purpose and may not be taken from them by contract, adverse possession, or otherwise, without its consent." *United States v. 7,405.3 Acres of Land, supra*, 97 F.2d at 422.

■ More important, the application of these defenses to a suit by tribe members to regain possession of Indian lands would be inconsistent with the federal posture of trust and vigorous protection of Indian rights. The Nonintercourse Act, which has existed without material change since 1790, provides:

> "No purchase, grant, lease or other conveyance of lands, or any title or claim thereto, from any Indian nation or tribe of Indians shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution. . . ."

This Act is designed to protect the Indians from their own improvidence and to prevent the unfair or improper disposition of Indian lands. *Joint Tribal Council of Passamaquoddy Tribe v. Morton*, 528 F.2d 370, 373 (1st Cir. 1975). It establishes a relationship of trust and guardianship between the United States and the Indians which the federal government alone may terminate. Insofar as state statutes of marketable title or limitations interfere with this trust, they cannot be enforced.[5]

■ The cases make plain that limitations, adverse possession, laches,[6] and estoppel cannot bar recovery of Indian lands in a suit brought to recover protected territory. In *Ewert v. Bluejacket*, 259 U.S. 129, 42 S.Ct. 442, 66 L.Ed. 858 (1922), the Supreme Court upheld the claim of individual Indians to allotted lands against defenses of statute of limitations and laches. The Court commented that, "[T]he equitable doctrine of laches . . . cannot properly have application to give vitality to a void deed and to bar the rights of Indian wards in lands subject to statutory restrictions." 259 U.S. at 138, 42 S.Ct. at 444. As the result in *Ewert* indicates, the inapplicability of these affirmative defenses extends to suits by individual Indians and is not solely a product of the sovereign immunity of the United States. The determination is rooted

---

5. Even within the original 13 colonies, Indian title cannot be extinguished without federal consent. *Oneida Indian Nation v. County of Oneida*, 414 U.S. at 670, 94 S.Ct. 772.

6. Laches is a peculiarly inapposite defense since plaintiffs seek relief of a legal, not equitable nature. *Cf. Sun Oil Company v. Fleming*, 469 F.2d 211 (10th Cir. 1972).

in the language and purpose of federal protective statutes like the Nonintercourse Act.

The reasoning in *United States v. 7,405.3 Acres of Land, supra,* 97 F.2d at 422–23, is illustrative. In that case, the court needed to determine title to certain lands in order to decide ownership of moneys paid in a condemnation proceeding. Judge Parker pointed first to the federal guardianship over the Indian tribes. He reasoned that this guardianship made Indian lands "an instrumentality" of the federal government, partaking of that government's historic immunity. The court then added,

"a statute of the United States expressly forbids the acquisition of lands of any Indian tribe by purchase, grant, lease or other conveyance, except by treaty or convention . . . .. Certainly, if the land was not alienable by the Indians, title could not be obtained against them by adverse possession."

Relying on the *7,405.3 Acres of Land* decision, the court in *United States v. Ahtanum Irrigation District, supra,* 236 F.2d at 334, noted that,

"[I]n respect to the rights of Indians in an Indian reservation, there is a special reason why the Indians' property may not be lost through adverse possession, laches or delay. This . . . arises out of the provisions of Title 25 U.S.C.A. § 177, R.S. § 2116, which forbids the acquisition of Indian lands or of any title or claim thereto except by treaty or convention." [7]

 Finally, I agree with Judge Pettine that it would be anomalous to achieve a different result if the United States brings suit as opposed to the particular tribe where " 'the interests sought to be protected by

Congress are the same, no matter who the plaintiff may be.' " *Narragansett Tribe of Indians, supra.* The individual Indians have no assurance that their claims will be pursued with sufficient speed and efficiency by the government because of the immense administrative burden involved. *Capitan Grande Band of Mis. Indians v. Helix Irrigation District,* 514 F.2d 465, 470–71 (9th Cir.), *cert. denied,* 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975). Relying on the strong federal policy in favor of vindication of such Indian claims, the Supreme Court recognized that the tribe suing on its own behalf independent of the United States may invoke federal jurisdiction to regain possession of lands allegedly taken in violation of the Nonintercourse Act.[8] That same federal policy leads me to conclude that laches, limitations, adverse possession, Connecticut's market title statute, and waiver and estoppel can no more bar recovery on the part of plaintiffs here than they might if the United States were a party plaintiff.

**B. Pendent State Claims**

 Plaintiffs also claim pendently that certain of the lands in question were alienated in violation of Conn.Gen.Stat.Ann. § 47–60. That Act mandates:

"Except as otherwise expressly provided, all conveyances by an Indian of any land belonging to, or which has belonged to, the estate of any tribe shall be void."

Plaintiffs maintain that affirmative defenses Three through Seven are legally insufficient to preclude success on the pendent claim as well. Defendants have not addressed this question in their brief and so appear to concede the issue. In denying leave to amend as to the pendent state law

---

7. Defendants rely on *Felix v. Patrick,* 145 U.S. 317, 12 S.Ct. 862, 36 L.Ed. 719 (1892), for the proposition that laches can defeat an Indian claim for repossession of restricted lands. In that case, however, the Court was willing to concede that "plaintiffs were incapable, so long as they maintained their tribal relations, of being affected with laches," but decided that plaintiffs still might not be entitled to the extraordinary relief demanded. 145 U.S. at 332–33, 12 S.Ct. at 867.

8. The Supreme Court has commented that with respect to jurisdiction,

"[I]t would appear that Congress contemplated that a tribe's access to federal court to litigate a matter arising 'under the Constitution, laws, and treaties' would be at least in some respects as broad as that of the United States suing as the tribe's trustee."

*Moe v. Confederated Salish and Kootenai Tribes,* 425 U.S. 463, 473, 96 S.Ct. 1634, 1641, 48 L.Ed.2d 96 (1976).

claim, I note that Connecticut provides specifically by statute that adverse possession and statute of limitations shall be no defense in an action to recover Indian lands. Conn.Gen.Stat.Ann. § 47–61. Insofar as Connecticut also asserts an interest in the title of such Indian lands, it too has stood in a position of trust and guardianship with respect to the resident Indian tribes. As in the case of the United States, since the defenses of adverse possession, laches, and estoppel would not be available against the state, *see, e. g., Goldman v. Quadrato,* 142 Conn. 398, 114 A.2d 687 (1955); *Town of Westport v. Kellems Company,* 15 Conn. Supp. 485, 491 (Ct.Com.Pl. Fairfield Cnty. 1948), they remain inapplicable against the Indian wards.

Leave to amend with respect to Defendants' Third through Seventh Defenses is denied. Leave to amend to assert the Eighth Defense of waiver and estoppel based on acts predating the passage of the Nonintercourse Act is granted.

SO ORDERED.