**SHEET METAL WORKERS INTERNA-
TIONAL ASSOCIATION, LOCAL
UNION NO. 59, Plaintiff,**

v.

**EMPLOYERS ASSOCIATION OF
ROOFERS AND SHEET METAL
WORKERS, INC., Defendant,**

**National Labor Relations Board,
Intervenor.**

Civ. A. No. 75–185.

United States District Court,
D. Delaware.

April 1, 1977.

Francis S. Babiarz of Biondi & Babiarz,
P. A., Wilmington, Del., and Donald W.
Fisher and Raymond J. Sweeney of Mulhol-
land, Hickey & Lyman, Toledo, Ohio, for
plaintiff.

Ben T. Castle of Young, Conaway, Star-
gatt & Taylor, Wilmington, Del., and Vin-
cent J. Apruzzese and Francis A. Mastro of
Apruzzese & McDermott, Springfield, N.J.,
for defendant.

Elliott Moore, Deputy Associate Gen.
Counsel, and Ruth Peters and Christine
Weiner Peterson, Attys., N.L.R.B., Wash-
ington, D.C., for intervenor.

LATCHUM, Chief Judge.

In 1973, an interest arbitration[1] clause was written into the collective bargaining agreement between the Sheet Metal Workers International Association, Local 59, ("plaintiff") and the Employers Association of Roofers and Sheet Metal Workers, Inc. ("defendant").[2] When the 1974 negotiations failed to produce a contract, the parties submitted their dispute to the interest arbitration panel specified in their contract. The defendant's members became disenchanted with the interest arbitration award and promptly vowed not to submit contract renewal disputes to arbitration again. When the plaintiff and the defendant were unable to settle on a contract in 1975, the plaintiff invoked the interest arbitration procedures, but the defendant refused to comply with the interest arbitration award. Accordingly, plaintiff brought this action pursuant to § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, to enforce the interest arbitration award.[3]

When it became clear that the 1975 bargaining efforts would be fruitless and that the plaintiff would turn to the interest arbitration procedures, the defendant filed unfair labor practice charges with the National Labor Relations Board ("NLRB" or "Board").[4] The Board's General Counsel pursued the charges and an administrative law judge found that the plaintiff had violated § 8(b)(1)(B) and § 8(b)(3) of the LMRA, 29 U.S.C. § 158(b)(1)(B) & (3), by coercing defendant's members in the selection of their bargaining agent and by failing to bargain in good faith.[5] While that action was on review before the full Board, the NLRB intervened in this case and moved for a stay pending the Board's decision.[6] The stay was granted[7] and later the Board affirmed the administrative law judge.[8] In light of the Board's holding, all parties have asked the Court to lift its stay.[9] There are no material facts in dispute and both plaintiff and defendant have moved for summary judgment pursuant to Rule 56, F.R.Civ.P.;[10] the NLRB has urged

1. Interest arbitration is sometimes referred to as new contract arbitration.

"There are generally two types or categories of labor arbitration. The more common type is grievance arbitration, which relates to disagreement over the interpretation of the terms of an existing contract. The other type is concerned with the arbitration of new contract provisions, usually resorted to when the parties are unable to agree on the provisions of a new, renewed or reopened contract." *NLRB v. Columbus Printing Pressmen*, 543 F.2d 1161, 1163 n.4 (C.A.5, 1976).

2. Plaintiff represents sheet metal workers in Delaware and defendant is an association of sheet metal contractors in Delaware.

3. Although the defendant initially contended that § 301 of the LMRA does not supply subject matter jurisdiction to enforce an interest arbitration award, it has now abandoned that argument. (Docket Item 22, p. 5). Nevertheless, the Court has an independent obligation to assess whether it has jurisdiction over the case before it. *E. g., People's Bank v. Calhoun*, 102 U.S. 256, 260–61, 26 L.Ed. 101 (1880).

Despite some early authority to the contrary, *Boston Printing Pressmen's Union v. Potter Press*, 141 F.Supp. 553 (D.Mass.1956), *aff'd*, 241 F.2d 787 (C.A.1, 1957), *cert. denied*, 355 U.S. 817, 78 S.Ct. 21, 2 L.Ed.2d 31 (1957), it is now generally accepted that an interest arbitra-

tion award may be enforced in a suit premised upon § 301. *Chattanooga Mailers Union v. Chattanooga News-Free Press Co.*, 524 F.2d 1305, 1314–15 (C.A.6, 1975); *Winston-Salem Printing Pressmen v. Piedmont Pub. Co.*, 393 F.2d 221 (C.A.4, 1968); accordingly, this Court has subject matter jurisdiction over plaintiff's claim.

4. Docket Item 7.

5. Docket Item 15.

6. Docket Item 19.

7. Docket Item 21.

8. 227 NLRB No. 90.

9. The Court has been informed that the Board has petitioned for enforcement and the plaintiff has sought review of the Board's order in the United States Court of Appeals for the Third Circuit. The plaintiff and the defendant have represented also that either would appeal an adverse decision; thus, they seek a prompt decision from this Court in order that the merits of this case and the NLRB case can be considered together on appeal.

10. Docket Items 6, 7.

the Court to grant defendant's motion for summary judgment.[11]

The plaintiff and defendant incorporated the following interest arbitration clause into their 1973–74 contract:

"Article X

\* \* \* \* \* \*

SECTION 8. In addition to the settlement of grievances arising out of interpretation or enforcement of this agreement as set forth in the preceding sections of this Article, any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this agreement shall be settled as hereinafter provided:

(a) Should the negotiations for renewal of this agreement become deadlocked in the opinion of the Local Union or of the Local Contractors' Association, or both, notice to that effect shall be given to the office of the General President of Sheet Metal Workers' International Association and the national office of the Sheet Metal & Air Conditioning Contractors' National Association, Inc. If the General President of Sheet Metal Workers' International Association and the Chairman of the Labor Committee of Sheet Metal and Air Conditioning Contractors' National Association believe the dispute might be adjusted without going to final hearing before the National Joint Adjustment Board, each will then designate a panel representative who shall proceed to the locale where the dispute exists as soon as convenient, attempt to conciliate the differences between the parties and bring about a mutually acceptable agreement. If such panel representatives or either of them conclude that they can not resolve the dispute, the parties thereto and the General President of Sheet Metal Workers' International Association and the national office of Sheet Metal and Air Conditioning Contractors' National Association shall be promptly so notified without recommendation from the panel representatives. Should the President of Sheet Metal Workers' International Association or the Chairman of the Labor Committee of Sheet Metal and Air Conditioning Contractors' National Association fail or decline to appoint a panel member or should notice of failure of the panel representatives to resolve the dispute be given, the parties shall promptly be notified so that either party may submit the dispute to the National Joint Adjustment Board. The dispute shall be submitted to the National Joint Adjustment Board pursuant to the rules as established and modified from time to time by the National Joint Adjustment Board. The unanimous decision of said Board shall be final and binding upon the parties, reduced to writing, signed and mailed to the parties as soon as possible after the decision has been reached. There shall be no cessation of work by strike or lockout unless and until said Board fails to reach a unanimous decision and the parties have received written notification of its failure."

The National Joint Adjustment Board ("NJAB") represents a combined effort of the Sheet Metal Workers International Association ("International") and the Sheet Metal and Air Conditioning Contractors' National Association, Inc. ("SMACNA")[12] to reduce the need for self-help resolution of disagreements over the terms of collective bargaining agreements. If negotiations between a local union and a local employers' association are unsuccessful and conciliation efforts of the International and SMACNA fail, either party to the contract may request a hearing before the NJAB. A unanimous decision of the NJAB fixes the terms of the contract. If the NJAB cannot reach unanimous agreement, the local union and local employers' group are

---

11. Letters of Elliott Moore, Deputy Associate General Counsel, NLRB, to the Court, dated January 11, 1977 and February 2, 1977.

12. It is important to note that the defendant is not a member of SMACNA.

then able to pursue traditional methods of labor dispute resolution.

In April, 1974, after concluding that their negotiations would not produce a contract beginning in May, 1974, the parties turned to their interest arbitration clause for resolution of the deadlock. The failure of conciliation efforts initiated by SMACNA and the International led to the convening of a NJAB hearing. The contract imposed by the NJAB's unanimous decision included a wage increase of 25 cents per hour more than the plaintiff had sought in its bargaining sessions with defendant; the interest arbitration clause was also carried over into the 1974–75 contract.

Members of the defendant were upset by what they perceived as an unfair and exorbitant award in favor of the plaintiff and, therefore, notified the plaintiff that they would not be bound by any NJAB award granted after the 1974–75 contract expired.[13]

In January, 1975, both parties exchanged notices indicating that they wished to renegotiate the terms of their contract. It soon became apparent that plaintiff and defendant had serious differences over the role of the NJAB and the concept of interest arbitration. With these and other issues between them, the plaintiff announced that it would seek resolution of their dispute through the interest arbitration procedures of the NJAB, and the 1974–75 contract expired on April 30, 1975, without the parties having agreed to a new contract.

On May 1, 1975, the defendant filed unfair labor practice charges, and on December 22, 1976, the Board held that the plaintiff had failed to bargain in good faith and, therefore, had violated § 8(b)(3) of the LMRA by insisting to impasse on certain non-mandatory subjects of bargaining including the NJAB interest arbitration clause. Furthermore, the NLRB concluded that plaintiff's insistence on NJAB and,

thereby, SMACNA participation deprived the defendant and its members of their right to choose their collective bargaining representative as guaranteed by § 8(b)(1)(B) since the defendant is not a member of SMACNA.

In the meantime, the plaintiff had again obtained a hearing before the NJAB, but the defendant refused to appear. After the plaintiff presented its position, the NJAB resolved disputed issues in favor of the plaintiff in an award issued June 28, 1975.[14] It is enforcement of this 1975–76 NJAB imposed contract that plaintiff seeks.

The Board concluded "that the entire thrust of the [plaintiff's] tactics [bargaining to impasse on non-mandatory subjects] was to force the negotiations to a deadlock in order to submit the dispute to the National Joint Adjustment Board, a body on which the [defendant] has no representation."[15] The Board's order in part required the plaintiff to cease and desist from:

"Insisting on compliance with, or attempting to enforce the award of the National Joint Adjustment Board of July [sic] 28, 1975, insofar as that award determines the terms and conditions of a new collective-bargaining agreement between [plaintiff] and [defendant]."[16]

In spite of the broad scope of the Board's order, entered after the filing of this lawsuit, the plaintiff continues to press for enforcement of the 1975 NJAB award.

■ Resolution of the issues before the Court is both aided by and dependent upon the decision of the NLRB. It is clear the Board's decision can have collateral estoppel consequences on litigation in the courts. *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966); *Eazor Express, Inc. v. General Teamsters Local 326*, 388 F.Supp. 1264, 1266–67 (D.Del.1975). The plaintiff, however, argues that the issues before the Board and this Court are not precisely the

---

13. Evidently, the defendant's members were willing to accept the interest arbitration procedure until the NJAB established the 1974–75 contract.

14. Docket Item 7, App. G.

15. 227 NLRB No. 90, pp. 5–6.

16. *Id.* p. 32 (par. 1(f) of Board's order).

same and, accordingly, the decision of the Board should not be given collateral estoppel effect.[17]

The Board, in an adjudicatory proceeding, determined that the plaintiff had engaged in a course of unlawful conduct in order to be able to force submission of the bargaining disputes to the NJAB. The Board's order directing the plaintiff to abjure seeking the benefits of the NJAB award reflects its view that the NJAB award was the product of plaintiff's unlawful conduct. Thus, the basic issue confronting the Court is whether an interest arbitration award that is a direct and immediate product of unlawful conduct should be enforced.

It is readily apparent that a contract resulting from a statutory violation should not be enforced. *Ewert v. Bluejacket*, 259 U.S. 129, 138, 42 S.Ct. 442, 66 L.Ed. 858 (1922).

"It is no less true in suits brought under § 301 to enforce arbitration awards than in other lawsuits that the 'power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States. . . .' *Hurd v. Hodge*, 334 U.S. 24, 34–35 [68 S.Ct. 847, 92 L.Ed. 1187] (1948). The public policy to be enforced is a part of the substantive principles of federal labor law which federal courts, under the mandate of *Textile Workers Union of America v. Lincoln Mills*, 353 U.S. 448 [77 S.Ct. 912, 1 L.Ed.2d 972] (1957), are empowered to fashion." *Local 453, IUE v. Otis Elevator Co.*, 314 F.2d 25, 29 (C.A.2, 1963), cert.

*denied*, 373 U.S. 949, 83 S.Ct. 1680, 10 L.Ed.2d 705 (1963).

*See Botany Industries, Inc. v. New York Joint Board*, 375 F.Supp. 485, 490–94 (S.D. N.Y.1974), *vacated and dismissed as moot*, 506 F.2d 1246 (C.A.2, 1974). The NLRB found that the contract awarded by the NJAB interest arbitration panel was predicated upon several breaches of the federal labor laws, and this Court will not enforce an arbitration award or contract gained under such circumstances.

Furthermore, the NJAB panel has directed the defendant to provide certain contractual benefits to plaintiff's members, but the NLRB has ordered the plaintiff not to seek enforcement of the NJAB award. The Court cannot order the defendant to comply with the NJAB's decision without directly interfering with an express order of the Board because enforcing the award would confer upon plaintiff the fruits of an effort which the Board ordered it not to undertake. Where the Board's order and an arbitration award conflict, the Board's order must prevail. *Carey v. Westinghouse Corp.*, 375 U.S. 261, 272, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964).[18]

An order will be entered denying plaintiff's motion for summary judgment but granting defendant's motion for summary judgment.[19]

---

17. Plaintiff, of course, contests the Board's order. However, it is not for this Court to review the Board's decision as jurisdiction for appeal of a Board order is vested exclusively in the Court of Appeals. 29 U.S.C. § 160(f); *Housewright v. Hull*, 104 F.Supp. 234 (N.D.Ohio, 1952).

18. The plaintiff argues that, if the Court refuses to enforce the entire contract award, it should enforce that portion of the contract relating to mandatory bargaining issues which were resolved before the deadlock over the non-mandatory issues. The plaintiff, however, ignores the on-going nature of the collective bargaining process, and this Court cannot assume that plaintiff's good faith bargaining efforts might not have led to some further modification of the mandatory issues in favor of the non-mandatory issues. In addition, the Board's broad order reaches all terms of the contract and cannot reasonably be limited to the non-mandatory terms.

19. In light of the Court's holding, it is unnecessary to consider defendant's alternate contentions.