The CABAZON BAND OF MISSION INDIANS, Plaintiff-Appellant,

v.

The CITY OF INDIO, CALIFORNIA and C. Samuel Cross, individually and in his official capacity as Chief of Police, City of Indio, California, Defendants-Appellees.

No. 81–5439.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 4, 1982.

Decided Dec. 14, 1982.

---

2. Judge Reinhardt concurs in the result, but was unable to participate in the preparation or approval of this Opinion.

Glenn M. Feldman, Abourezk, Shack & Mendenhall, Washington, D.C., for plaintiff-appellant.

J. Nicholas Counter, III, Los Angeles, Cal., argued, for defendants-appellees; William Cole, Los Angeles, Cal., on brief.

Before HUG, TANG and PREGERSON, Circuit Judges.

TANG, Circuit Judge:

Plaintiffs sued for declaratory and injunctive relief to prohibit the enforcement of portions of certain local ordinances by the City of Indio on plaintiff's Indian reservation, which Indio purportedly annexed. On cross-motions for summary judgment the district court granted defendants' motion. We reverse.

FACTS

The Cabazon Band of Mission Indians is a federally recognized Indian tribe. Its governing body is recognized by, and the Articles of Association are approved by, the Secretary of the Interior. The Cabazon Indian Reservation (hereinafter "the Reservation") consists of approximately 1700 acres in Riverside County, California. Legal title to the Reservation is held by the United States of America, in trust for the Cabazon Band. Indio is a general law city incorporated under the Constitution and laws of the State of California, and C. Samuel Cross is the Chief of Police of that city.

Between January and May, 1970, the City of Indio conducted certain proceedings designed to annex both privately owned lands and that portion of the Reservation which is the subject of this suit. At the time of the

annexation proceedings, former Cal. Gov't Code Sections 35470–71 (West 1968) (repealed 1977), entitled "Annexation of Territory Owned by the Federal Government," were in effect.[1] These provisions authorized the initiation of proceedings by a municipality to annex federally-owned territory "[i]f the Federal Government or agency thereof owning such territory consents to the annexation."

Prior to the completion of the annexation proceedings, the city was advised that the Cabazon Band had voted to oppose such annexation. Subsequently, the city was advised by the United States Bureau of Indian Affairs that the United States did not recognize the validity of the annexation for failure to obtain the consent of the United States and the Cabazon Band.[2]

Pursuant to the powers set forth in its Articles of Association, on May 24, 1980, the Cabazon Band duly enacted Cabazon Tribal Ordinance No. 5.7, Regulation of Card Clubs. This ordinance authorized and regulated playing and wagering on the card games of draw poker, lowball draw poker and panguingue. It also provided for the establishment by the Cabazon Band of one or more card clubs on the Reservation.

In conformity with the Tribal Ordinance, the Cabazon Band operates a card club on the Reservation. The club is located on that portion of the Reservation which the City of Indio attempted to annex. It is open to both Cabazon Band members and the general public.

The playing of the card games allowed in the Tribal Ordinance is prohibited by Indio City Code §§ 15.15, 15.16 and 15.17. On October 18, 1980, Chief Cross and several members of the Indio Police Department came onto the Reservation, entered the card club and observed a number of individuals playing and wagering on the games. The officers issued citations to over 100 members, employees, and non-members of the Cabazon Band, alleging violations, *inter alia,* of §§ 15.15, 15.16 and 15.17 of the Indio City Code.

In October of 1980, the Cabazon Band brought suit for declaratory and injunctive relief to prohibit the enforcement of Indio's ordinance. The Band also applied for a temporary restraining order and a preliminary injunction. The district court denied the application for the restraining order, but granted the motion for the injunction. The parties filed cross motions for summary judgment. The court granted defendants' motion and dissolved the injunction.

The Band subsequently filed a motion to vacate judgment. In the alternative, the Band moved pursuant to F.R.C.P. 62(c) for restoration of the injunction pending appeal on the ground that the revenue from the Band's card club was its sole source of income. The Band argued that without these funds it would be immediately and irreparably harmed in that it would have no source of income to finance or operate its tribal government.

The court denied the motion for vacation of judgment, but granted the motion for restoration of the injunction pending appeal.

The Cabazon Band raises three issues on appeal: (1) Was Indio's annexation of the reservation land valid? (2) Does 18 U.S.C. § 1162 grant Indio jurisdiction to enforce its ordinance on the Reservation? (3) Is Indio preempted from enforcing its ordinance against non-Indians on the reservation? Since our resolution of the issue of annexation validity is dispositive, our discussion is confined to that issue.

I. *Validity of the annexation*

In granting defendant's motion for summary judgment, the district court made the

---

1. These sections were repealed as part of the new Municipal Organization Act, ch. 1253, § 8, Stats.1977. Annexation is now generally covered by Cal. Gov't Code §§ 35011–14 (West 1982).

2. By letter dated Sept. 7, 1973, the Southern California Agency for the Bureau of Indian Affairs advised the City of Indio that it was the opinion of the Regional Solicitor, Department of the Interior (letter dated August 22, 1973), that the attempted annexation of Cabazon Reservation land was void for failure to obtain the consent of both the United States and the Indians.

following conclusions of law with regard to the annexation:

When the City of Indio in 1970 annexed lands which included sections of the Cabazon Indian Reservation, former California Government Code Sections 35470–35471 provided the sole means by which territory owned by the federal government could be annexed by a municipality. The City's failure to obtain the consent of the Cabazon Band pursuant to those sections rendered Indio's annexation of the Cabazon lands vulnerable to challenge.

Challenge to annexation proceedings may be made only as provided for under state law. *See Howard v. Commissioners of Louisville,* 344 U.S. 624 [73 S.Ct. 465, 97 L.Ed. 617] (1953).

Under California law, a completed annexation may be challenged only by means of *quo warranto* or *in rem* actions. The time for instituting such actions has expired and thus the Cabazon Reservation lands in question are part of the City of Indio. California Code of Civil Procedure §§ 349.5 and 860.

The Band contends the district court erred because: (1) an annexation that fails to comply with statutory requirements of consent is void *ab initio* and relief from the annexation is available even if not sought within the statutory period for attack; and (2) state statutes of limitation cannot bar assertion of federal Indian rights.

(A) *Annexation void ab initio*

■ Under federal law an act occurring in violation of a statutory mandate is void *ab initio. Ewert v. Bluejacket,* 259 U.S. 129, 138, 42 S.Ct. 442, 444, 66 L.Ed. 858 (1922). California courts have extended this general rule to annexation proceedings. In *Forde v. Town of Corte Madera,* 115 Cal.App.2d 32, 251 P.2d 988 (1952), plaintiffs sued to have the annexation proceedings of Corte Madera declared invalid on the grounds that the land in question had been previously annexed by the town of Larkspur. The court held Corte Madera's annexation void:

. . . the absence of a prior annexation is, by the law, made an indispensable condition precedent to the filing of a subsequent proceeding. The existence of a prior proceeding renders the subsequent one void, under the well settled principle that an act is void if specifically prohibited by statute.

251 P.2d at 991 (citations omitted). Equally pertinent to these proceedings is the court's holding that the plaintiff's failure to contest the subsequent annexation within the statute of limitations period did not "breathe life" into the void annexation. *Id.*

Former Cal. Gov't Code Sections 35470–71, in effect at the time of the annexation proceedings, control the annexation in the instant case. Section 35470 authorized city annexation of federally owned territory. Section 35471 provided the procedural machinery for such annexations:

If the Federal Government or agency thereof owning such territory consents to the annexation, the city legislative body may initiate proceedings for annexation . . . .

Cal. Gov't Code § 35471 (West 1968) (repealed 1977).

■ Federal consent was thus a condition precedent to the initiation of the city's annexation proceedings. It follows that the failure to obtain such consent rendered Indio's annexation of the federally reserved land void *ab initio.*[3] Under California law, annexation statutes are "much more than mere formalities" and an annexation "proceeding is either properly carried through in close conformity with the statutory requirements, or it becomes as the trial court here found, a complete nullity." *Hubbell v. City of Los Angeles,* 142 Cal.App.2d 1, 297 P.2d 724, 727 (1956).

Indio counters that, under *Corte Madera,* the running of the statute of limitations

---

**3.** California courts have also held, at least as to annexation by water districts, that where consent is a condition precedent to annexation, the absence of consent renders the annexation void. *See, e.g., Fuller v. San Bernardino Valley Mun. Water Dist.,* 242 Cal.App.2d 52, 63, 51 Cal.Rptr. 120, 128 (1966).

"cured" its failure to comply with the procedural provisions of the annexation statute. Indio contends that its failure to obtain federal consent to the annexation is a mere procedural defect. Indio misunderstands the import of *Corte Madera.* The City of Indio accurately quotes the following from *Corte Madera:*

> A curative statute may operate to cure any procedural irregularity—even one going to jurisdiction . . . .

The city fails, however, to complete that sentence in which the court went on to state:

> but it cannot operate to breathe life into a proceeding, the very filing of which is prohibited by statute . . . . "Curative laws may heal irregularities in action, but they cannot cure want of authority to act at all."

251 P.2d at 992 (citation omitted).

As discussed previously, federal consent is a condition precedent to the city's annexation proceedings. Indio's failure to obtain that consent constitutes more than a mere procedural defect. By failing to comply with Cal. Gov't Code §§ 35470–71, Indio denied the Cabazon Band a substantive right—the right to prevent annexation by withholding its consent. Furthermore, both the Band and the federal government expressly withheld their consent. Absent federal consent, Indio had no authority to act at all.

As a final argument, Indio contends that the only means by which the annexation in question could have been accomplished in 1970 under California law was pursuant to the Annexation of Uninhabited Territory Act of 1939, the provisions of which contained no requirement for federal consent. For this proposition, Indio relies principally upon *United States Pipe & Foundry Co. v. City Council,* 150 Cal.App.2d 630, 310 P.2d 431 (1957). That case is inapposite. *United States Pipe and Foundry Co.* predated the enactment of Cal. Gov't Code §§ 35470–71, and is wholly silent on the question of annexation of federally-owned territory. Moreover, in *Weber v. City Council of Thousand Oaks,* 9 Cal.3d 950, 109 Cal.Rptr.

553, 513 P.2d 601 (1973), a case brought after enactment of §§ 35470–71, the California Supreme Court indicated that the state's general annexation procedures were "[s]ubject to special exceptions for territory that is publicly owned . . . ." 513 P.2d at 603. The court noted further that "[s]pecial provisions govern annexations of . . . territory owned by the federal government (§§ 35470–35471) . . . ." *Id.* n. 2. By designating Cal. Gov't Code §§ 35470–71 as "special exceptions" to the state's general annexation procedures, the court implied that these sections provided the exclusive means for annexing federal land. The result in the instant case is that, without federal consent, the City of Indio's annexation proceedings were void *ab initio.*

**(B)** *Statute of limitations*

■ Indio's attempted annexation was void *ab initio.* Thus, the Cabazon Band was not required to take action within any prescribed statutory time to establish invalidity. *See Corte Madera,* 251 P.2d at 991.

■ Further, a state statute of limitations may not bar the assertion of federal Indian rights. The district court, citing *Howard v. Commissioners of the Sinking Fund of Louisville,* 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617 (1953), incorrectly concluded that California's statute of limitations barred Cabazon Band from challenging Indio's annexation. In *Howard* the Supreme Court held that a state was free to conform its municipal structures to its own plan and could annex a federal enclave (which was originally acquired from the state) in accordance with state law. *Howard* did not, however, involve the question whether a state statute of limitations could bar a challenge to annexation of portions of an Indian reservation.

It is well settled that statutes of limitation cannot bar suits brought to protect rights enjoyed by Indians and Indian Tribes. *United States v. Minnesota,* 270 U.S. 181, 196, 46 S.Ct. 298, 301, 70 L.Ed. 539 (1926); *Ewert v. Bluejacket,* 259 U.S. 129, 137, 42 S.Ct. 442, 444, 66 L.Ed. 858 (1922). As the Supreme Court stated in *United States v. Minnesota:*

And it also is settled that state statutes of limitation neither bind nor have any application to the United States, when suing to enforce a public right or to protect interests of its Indian wards.

270 U.S. at 196, 46 S.Ct. at 301 (citations omitted). Furthermore, we agree with those courts which have applied this rule regardless of whether the case was brought by the United States as trustee for the tribe, or by the tribe itself. *See Schaghticoke Tribe of Indians v. Kent School Corp.*, 423 F.Supp. 780, 785 (D.Conn.1976); *Narragansett Tribe v. Southern R.I. Land Dev. Corp.*, 418 F.Supp. 798, 805 (D.R.I.1976).

Although under *Howard* state law may govern annexation proceedings, *Howard* does not affect the well settled rule that state statutes of limitation cannot bar the assertion of Indian rights.

We need not reach the issues presented by Cabazon Band's preemption and infringement arguments, nor its arguments regarding the construction of 18 U.S.C. § 1162, because we hold the annexation void.

REVERSED.