Cora Jim HAYMOND et al., Appellees,

v.

A. J. SCHEER et al., Appellants.

No. 46112.

Supreme Court of Oklahoma.

Oct. 7, 1975.

As Corrected Oct. 17, 1975.

Rehearing Denied Dec. 16, 1975.

Sam A. Denyer, Drumright, Thurman S. Hurst, Tulsa, Cubbage & Cubbage, Cushing, for appellants.

Robert J. Scott, William J. Perry, Pawnee, for appellees.

DOOLIN, Justice.

This controversy concerns the estate created under a trust patent granted by virtue of the General Allotment Act, 24 Stat. 388, Act of Congress, February 8, 1887. The rights of the allottee under the trust patent issued by the President of the United States to Phoebe Fancy Sun, Pawnee Allottee #359 on October 9, 1893, must be measured against the rights granted the railroad under provisions of the Enid and Anadarko Railroad Co. Act, 32 Stat. 43, Ch. 134 sometimes hereinafter called the Act of February 28, 1902.

We condense the salient facts as follows.

The trust patent covered 160 acres of land in Oklahoma territory described as Northeast quarter of section 32, Township 21 North, Range 6 East of the Indian Meridian in what is now Pawnee County, Oklahoma. It recited that under the fifth section of the General Allotment Act, supra, that the United States of America

"will hold the land thus allotted subject to all restrictions and conditions * * *" for the period of 25 years, in trust for the sole use and benefit of said Phoebe Fancy Sun * * * or in case of her decease, for the sole use of her heirs * * * and that at the expiration of said period, the United States will convey the same by patent to said Indian, or her heirs * * * in fee

* * * : Provided that the President of the United States may, in his discretion, extend the said period.[1]

Subsequent to the General Allotment Act, Congress passed the so called Enid and Anadarko Railway Co. Act, and this on February 28, 1902. On July 11, 1902, the Eastern Oklahoma Railway Company caused to be prepared a map or plat of the 80 acres of land in controversy as required under the provisions of § 15 of the Enid and Anadarko Act. This map was filed with the Department of Interior on July 26, 1902. Thereafter, the Eastern Oklahoma Railway Company took delivery of an instrument designated general warranty deed dated August 16, 1902, signed by Phoebe Fancy Sun, a single person; it was filed April 30, 1904. This last instrument stated:

"This deed is made under the authority of an Act of Congress approved February 28, 1902, and is purchased for a reservoir for the storage of water and other railroad purposes."

The AT&SF Ry. Co. became the successor in interest to the Eastern Oklahoma Ry. Co. in 1907 and used the premises concerned for a lake for storage of water used in its steam locomotives until 1947. In 1947, by quit claim deed (dated August 26, 1947 filed Jan. 21, 1948) it conveyed the 80 acres in question to the present defendants or their predecessors in title. All these instruments heretofore described covered the controversial lake or reservoir property excepting the trust patent which covered a full 160 acres including the controverted premises.[2]

While the property was owned by the AT&SF Ry. Co., it was leased to individuals and/or rod and gun associations who used same for recreational purposes. Rent was paid to the AT&SF Ry. Co. until the premises were alienated by the company.

The evidence also developed that the quit claim deed from the AT&SF Ry. Co. to the individual(s) was prompted by abandonment of steam locomotives and the switch to diesel power and lack of the need of water for such equipment.

On January 6, 1960, the heirs of Phoebe Fancy Sun filed suit to quiet title to the lake property in controversy naming as defendants the remote grantees from Eastern Ry. their lessees and all other persons interested. Personal service was obtained upon some defendants, appearances were entered by others and publication was had on still other defendants. No question as to adequacy of service or notice is presented.

The AT&SF Ry. Co. disclaimed interested in the premises, the owners or lessees filed general demurrers and also pleadings setting out the defenses of adverse possession and laches. The defendants also asked the court to declare their interests paramount and that the title be quieted in them and against the heirs of Phoebe Fancy Sun.

In addition to the prayer of quiet title, the plaintiffs sought money damages for withholding possession of premises (rent and profits); trial was held July 17th and 24th, 1972, with judgment rendered October 16, 1972, for the plaintiffs; jury being waived.

---

1. The original act was extended as to the Pawnees by Executive Order #2816 on March 2, 1918, by President Woodrow Wilson for ten years; and

The restrictions were again extended as to the Pawnees by Executive Order #4816 on May 29, 1928, by President Calvin Coolidge for ten years; and

The restrictions were again extended as to the Pawnees by Executive Order #7716 on September 29, 1937, by President Franklin D. Roosevelt for 25 years.

By the Sec. of Interior 28 FR 122 for 5 years; and
By the Sec. of Interior 28 FR 11630 for 1 year; and
By the Sec. of Interior 33 FR 15067 to Jan. 1, 1974.

2. The remaining 80 acres of the Phoebe Fancy Sun allotment was with Department of Interior approval conveyed to one Demiville by patent on July 28, 1918. Demiville and his heirs and assigns are not parties to this action.

The trial court's judgment quieted title in the Indian heirs, further granted judgment against certain joint defendants in the amount of $584.65, and judgment in the sum of $5,528.70 against one defendant for withholding possession and then finally held that the cabins were not a part of the realty and gave such cabin owners 90 days to remove the same from the premises.

The Court of Appeals, Division 2, reversed the trial court and remanded same with directions to quiet the title in the defendants, and vacate the money judgment in favor of the Indian heirs.

The Indian heirs seek certiorari.

We first observe that the parties are in agreement that the root or source of Eastern Oklahoma Railway's title is the Enid and Anadarko Act; they are also in agreement that the General Allotment Act is the source of the Indian heirs' title and that the plaintiffs represent the living heirs of Phoebe Fancy Sun. We must decide first, what estate was granted the Eastern Oklahoma Railway under the Act of February 28, 1902, (Enid and Anadarko Act) and what was granted under the conveyance (general warranty deed) from Pawnee allottee #359 to Eastern Ry. dated August 16, 1902.

■ We find that the grant under the Enid and Anadarko Act to Eastern Ry. Co. was an easement in the nature of a limited fee. Not only is the act entitled "An act to grant right-of-way through the Oklahoma territory and the Indian territory * * *," but the courts are in complete agreement as to what was granted upon filing of the maps and plats required by the act. See *St. Louis-San Francisco Railway Company v. McBride et al.,* 104 Okl. 216, 231 P. 284 (1924); *United States v. Magnolia Petroleum Company,* 110 F.2d 212 (10th Cir. 1940); *Oklahoma City-Ada-Atoka Railway Company v. City of Ada,* 182 F.2d 293 (10th Cir. 1950); *Seminole Nation v. White,* 224 F.2d 173 (10th Cir. 1955); *Town of Maysville, Okl. v. Magnolia Petroleum Co.,* 272 F.2d 806 (10th Cir. 1960); *City of Wilburton, Okl. v. Swafford,* 253 F.2d 479 (10th Cir. 1958); *Truskett v. Closser,* 198 F. 835, 837 (8th Cir. 1912); *St. Louis-San Francisco Railway Company v. Town of Francis,* 249 F.2d 546 (10th Cir. 1958). We are not unmindful that all of the cases last cited are ones arising in Indian Territory: but *Truskett v. Closser,* supra states that Sections 13 through 22 of the Enid and Anadarko Ry. Act of February 28, 1902, were extended and continued in force in the State of Oklahoma, citing as authority 35 Stat. 312, Act of Congress, May 27, 1908.

■ Were it not for the fact that the Eastern Railway Company took what is denominated a General Warranty Deed and contends that the Pawnee allottee had "full power of alienation" our problems would be at an end. It is this last instrument that the defendant owners and lessees claim creates a fee simple title in the Eastern Railway Company and thus through various and mesne conveyances such title has come down to the present defendants.

We do not agree with this last conclusion for the Act of Congress, February 8, 1887, 24 Stat. 388, 25 U.S.C.A. § 348 provides:

"* * * * and if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract *shall be absolutely null and void*: (Emphasis supplied)

We have heretofore demonstrated in footnote 1 that the restrictions imposed by the General Allotment Act were still in effect as late as January 1, 1974. The provisions of the Trust Patent dated October 9, 1893, commenced the running of the restrictions for 24 Stat. 388, 389 #5 provided:

"*Upon the approval* of the allotments provided for in this act by the Secretary of the Interior, he shall cause patents to issue therefor in the name of the allottees, which patents shall be of the legal

effect, and declare that the United States does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, *of his heirs.*" (Emphasis supplied)

In the Phoebe Fancy Sun deed the limitation of twenty-five years commenced to run *upon approval* of the Secretary of the Interior on July 10, 1893.

The landowners and lessees next contend that the statute of limitations and the defense of laches are available to defeat the title of the Indian heirs. We have demonstrated that the deed from Phoebe Fancy Sun to the Eastern Railway Co. was void, likewise are the defenses of the statute of limitations, estoppel and laches denied the defendant land claimants and lessees; *Goodrum v. Buffalo,* 162 F. 817 (8th Cir. 1908).

■ In *Miller v. Fryer,* 35 Okl. 145, 128 P. 713, 714 (1912) we said:

"It is well settled that there can be no adverse possession against the federal government which can form the basis of title by estoppel or under the statute of limitations; and it has been held that the same rule applies where the lands involved are lands that have been allotted to Indians with restrictions upon alienation * * *.

See also *Patterson v. Carter,* 83 Okl. 70, 200 P. 855 (1921); *Lytle v. Fulotka,* 106 Okl. 86, 233 P. 456 (1925); and *United States v. 7,405.3 Acres of Land,* 97 F.2d 417 (4th Cir. 1938).

■ In *Miller v. Tidal Oil Co.,* 106 Okl. 212, 233 P. 696 (1925), we held:

"A conveyance of allotted restricted Indian lands made in violation of a federal statute authorizing the alienation of such lands is against public policy and absolutely void, and in no manner can any right, title or interest in such land be acquired under such a conveyance."

Nor do we think the fact some of the cited cases involve not railroad grants but mineral rights is such a distinction that would change the rights of these Indian wards and heirs; for "where an Indian holds legal title to lands with a restriction against alienation, the title may be transferred only under rules and regulations prescribed by the Secretary of Interior," *Bailey v. Banister,* 200 F.2d 683 (10th Cir. 1952); *Boren v. Burgess,* 97 F.Supp. 1019 (1951); *United States v. Gilbertson,* 111 F.2d 978 (7th Cir. 1940); *Heckman v. United States,* 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820 (1912).

■ *Gilbertson,* supra held that purported landowners who paid full consideration for the land twenty-three years ago and have since made improvements upon it in total ignorance of the restrictions against its alienation may *not* prevail in an action by the government to restore same to heirs of an Indian allottee. Only can such defenses, as limitations be raised when the conveyance by restricted Indian is made with the approval of the Secretary of the Interior, 25 U.S.C.A. § 347.

■ Lastly the judgment is claimed to be not sustained by the evidence and to be excessive. We find no merits in these propositions.

"Quiet title action is (an) action of equitable cognizance within the rule that judgment of the trial court in such action will not be disturbed on appeal unless clearly against the weight of evidence," *Caywood v. January,* 455 P.2d 49 (Okl.1969).

See also *King v. Oakely,* 434 P.2d 868 (Okl.1967).

■ We are of the opinion that the cause of action presented to us in this case is primarily equitable in nature and "a judgment of the trial court in a case of equitable cognizance will not be vacated on appeal because of insufficiency of the evidence where it is * * * not contrary to the clear weight thereof;" *Ward v. Lindly,*

294 P.2d 296 (Okl.1955). We have carefully weighed the evidence and find that it supports the judgment of the trial court.

Trial court's judgment reinstated; judgment of Court of Appeals, Division 2, reversed.

WILLIAMS, C. J., and LAVENDER, BARNES and SIMMS, JJ., concur.

IRWIN and BERRY, JJ., concur in result.

HODGES, V. C. J., and DAVISON, J., dissent.