**Florence Blacketter MOTTAZ, on behalf of herself and all others similarly situated, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 83–2582.**

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1984.

Decided Jan. 18, 1985.

Rehearing and Rehearing En Banc Denied April 29, 1985.

Derck Amerman, Leonard A. Zolna, Jr., Minneapolis, Minn., for appellants.

Kim Jerome Gottschalk, Native American Rights Fund, Boulder, Colo., for Clover Potter.

F. Henry Habicht, II, Asst. Atty. Gen., Larry M. Corcoran, David C. Shilton, J. Carol Williams, Attys., Dept. of Justice, Washington, D.C., for appellee; Mariana R. Shulstad, U.S. Dept. of the Interior, Twin Cities, Minn., of counsel.

Before HEANEY, JOHN R. GIBSON and FAGG, Circuit Judges.

HEANEY, Circuit Judge.

Florence Blacketter Mottaz[1] appeals the district court's dismissal of her "Secretarial Transfer"[2] suit against the United States on the ground the twenty-seven-year-old claim was time-barred by 28 U.S.C. § 2401(a) (1982). For the reasons set forth below, we reverse and remand.

## I. BACKGROUND.

On December 5, 1905, three Chippewa Indian ancestors of plaintiff Florence Blacketter Mottaz received eighty-acre trust allotments on the Leech Lake Reservation in Cass County, Minnesota, pursuant to the General Allotment Act of February 8, 1887, 25 U.S.C. §§ 331–334, 339, 341, 342, 348, 349, 354, 381 (1982) and the Nel-

---

1. Mottaz seeks to represent a class of similarly situated allottees, but her claim was dismissed before the class was certified.

2. A "Secretarial Transfer" claim involves the Department of Interior's sale, pursuant to 25 U.S.C. §§ 483, 404 or 379 (1982), of restricted Indian allotments without the consent of all the beneficial heirs as allegedly required by these statutes and Department of Interior rules, regulations and policies. See 48 Fed.Reg. 13698–99 (1983).

son Act of January 14, 1889, 25 Stat. 642. These ancestors were her mother, Esther Taylor, a/k/a Esther Grasshopper; her mother's sister, Mary Knickerbocker; and the latter's son, David Knickerbocker. Title to their allotments was held in trust by the United States for periods which were eventually extended indefinitely. *See* 25 U.S.C. § 462 (1982). Mottaz inherited one-fifth of the Taylor allotment and one-thirtieth of the Knickerbocker allotments. In the early 1950's, some, but not all, of the heirs with fractional holdings petitioned the Department of Interior, pursuant to 25 U.S.C. § 483 (1952), to sell their allotments. Mottaz claims that this statute and Department of Interior regulations and policies prevent the Secretary of Interior from selling the allotment interest of a non-consenting owner. In May, 1953, the United States Department of the Interior's Office of Indian Affairs sent to Mottaz forms which were captioned "Consent to Sale of Inherited Lands" for her Taylor and Knickerbocker allotments. The letters which accompanied the consent forms read in relevant part:

> Some of the owners have requested the sale of this land. We have appraised both land and timber, if any, and as soon as we get the consent to sell, an effort will be made to obtain a buyer by advertising for sale bids. This land will not be sold unless the high bid is equal to, or more than, the appraisal value. *If no reply is received from you within ten (10) days, it will be assumed that you have no objection to the sale.* [Emphasis added.]

Mottaz did not sign and return the consent forms to the Office of Indian Affairs.

Although apparently fewer than one-half of the Indian land-owners who received the notices returned them consenting to the sale, the government nonetheless sold the land in 1954. All three of the Mottaz allotments were sold to the United States Forest Service and they are now included with-

in the Chippewa National Forest. Mottaz claims that she did not consent to the sale of her land, and that she did not receive payment for it. The government claims that she did receive payment in 1955.

In 1967, Mottaz visited the Bureau of Indian Affairs (BIA) and received a list of all her allotment interests. The list did not show that she had an interest in the Taylor or two Knickerbocker allotments. In 1981, she again requested from the BIA a list of her allotment interests. The BIA indicated that she had held an interest in the Taylor and Knickerbocker allotments and that she might have a "Secretarial Transfer" claim under the "2415 Land Claims Project"[3] on the ground her land was sold without her consent.

On December 30, 1981, Mottaz filed a complaint in United States District Court on her own behalf and on behalf of other Indians with similar secretarial transfer claims. Her complaint alleged that the Taylor and Knickerbocker allotments were sold without her consent and thus their sale was illegal and void, that her property had been taken without due process and just compensation, and that the BIA's sale of the allotments without her consent was negligent and a breach of fiduciary duty. She sought damages in the amount of the fair market value of the Taylor and Knickerbocker allotments or rescission of their sale with title to revest in the heirs. Following a pretrial hearing on June 6, 1982, Mottaz withdrew her demand for rescission of the sale leaving only her demand for money damages in the amount of fair market value of the land. We do not, however, read this amendment of her complaint to mean that she abandoned the gist of her complaint which was that the sale of her land was illegal and void and did not transfer title. Rather, for practical reasons, she sought the equivalent of the land in damages rather than a return of the land itself.

On October 7, 1983, the district court granted the government's motion for sum-

---

3.  *See* 48 Fed.Reg. 13698 and *Covelo Indian Community v. Watt,* 551 F.Supp. 366 (D.D.C.1982).

74

mary judgment on the ground that Mottaz's action was barred by the six-year statute of limitations of 28 U.S.C. § 2401(a) (1982). The court cited no case where a court held that secretarial transfer claims are time-barred by section 2401, but relied on the following plain language of the statute:

Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.

The court held that Mottaz's cause of action accrued when she learned of the sale in 1954, and because she did not file suit until 1981, her suit was barred. This appeal followed.

## II. DISCUSSION.

The parties below agreed that the summary judgment motion would address only "procedural issues" and not the underlying "substantive issues." This prevented the district court from fully considering whether Mottaz's claim was time-barred.

■■■ It has been well established since *Ewert v. Bluejacket,*[4] 259 U.S. 129, 42 S.Ct. 442, 66 L.Ed. 858 (1922), and *Hampton v. Ewert,*[5] 22 F.2d 81 (8th Cir.1927), *cert. denied,* 276 U.S. 623, 48 S.Ct. 303, 72 L.Ed. 737 (1928), that a sale of restricted allotment land in violation of the federal restric-

tions on its alienability does not transfer title, and that the allottee or her heirs may not be barred by state statutes of limitation or laches from bringing suit to establish that they retain title to the land. *Haymond v. Scheer,* 543 P.2d 541, 545 (Okla. 1975);[6] *Smith v. Williams,* 78 Okla. 297, 190 P. 555, 557 (1920); *cf. Antoine v. United States,* 637 F.2d 1177, 1179–81 (8th Cir. 1981).

■■■ The parties cite no case which squarely considered whether *Ewert* prevents the application of *federal* statutes of limitation. However, we agree with amicus that Congress has not repudiated its policy of protecting Indian land by providing that claims against the United States for title to wrongfully alienated allotments are barred by a statute of limitations. The district court relied upon the general statute of limitations for claims against the United States set forth in 28 U.S.C. § 2401 (1982). This statute provides that all civil actions commenced against the United States are barred unless filed within six years after the cause of action first "accrues." However, this statute does not bar claims of title to allotments because *Ewert* is based on the principle that, if the underlying sale of land is void, the concept that a cause of action "accrues" at some point is inapplicable because the allottee simply retains title all along.

---

4. In *Ewert,* the Court held that the

Court of Appeals * * * while properly regarding the limitations statutes of Oklahoma as inapplicable, held the adult heirs were barred by laches in failing to institute suit after delivery of the deed to the land. In this the court fell into error.
* * * The purchase by Ewert being prohibited by the statute was void. * * * He still holds the legal title to the land and the equitable doctrine of laches, developed and designed to protect good faith transactions against those who have slept upon their rights, with knowledge and ample opportunity to assert them, cannot properly have application to give vitality to a void deed and to bar the rights of Indian wards in lands subject to statutory restrictions.
259 U.S. at 137–38, 42 S.Ct. at 444 (citations omitted).

5. In *Hampton,* 22 F.2d at 92, this Court held that an action to recover the value of minerals taken under an invalid lease of allotment land was not barred by laches because the principle set forth in *Ewert v. Bluejacket* "applies equally to all transactions which are void because of failure to observe statutory restrictions" on the alienability of allotment land.

6. In *Haymond,* 543 P.2d at 545, the court held that

A conveyance of allotted restricted Indian lands made in violation of a federal statute authorizing the alienation of such lands is against public policy and absolutely void, and in no manner [including the passage of time] can any right, title or interest in such land be acquired under such a conveyance.
*Quoting Miller v. Tidal Oil Co.,* 106 Okla. 212, 233 P. 696 (1925).

The government argues, however, that Mottaz does not seek simply to establish title to the Taylor and Knickerbocker allotments, but seeks to obtain damages for the government's alleged negligence and breach of fiduciary duty. Although we agree that Mottaz's complaint is not particularly well-drafted, we believe it must be read as raising the one essential claim that her land was sold without her consent, that she did not receive payment for her land, and that accordingly the sale was void and she retains title to the land. We believe that, on the narrow facts of this case, her claim for damages in the amount of the fair market value of the land must be construed as equivalent to a claim for return of the land itself. If the government sold Mottaz's land to the United States Forest Service without her consent and without sending her fair compensation, then, in light of the land's subsequent incorporation within an inaccessible national forest where the land has little value to Mottaz, as a matter of policy, we believe it is a fair and practical remedy, on the narrow facts alleged here, for Mottaz to seek compensation rather than return of the land.[7]

■ Thus, the statute of limitations issue cannot be resolved until several underlying factual and legal predicates are resolved. First, the district court must determine whether 25 U.S.C. § 483 (1952) and Department of Interior rules, regulations and policies in effect in 1953 prevented the Secretary of Interior from selling Mottaz's land without first obtaining her consent.

If so, it must determine whether Mottaz consented to the sale. We hold that her failure to return the "Consent to Sale" form does not constitute consent. However, if she received payment for the land in 1955, then, on the facts of this case, we believe it may be assumed that she consented to the sale and thus that she does not have a cause of action. The government must bear the burden of proving that it paid Mottaz and therefore that it holds valid title to the Taylor and Knickerbocker allotments.[8] If the government did not pay Mottaz, then it does not hold title to her allotments until she receives payment equal to the fair market value of the land. In light of the land's inclusion within the Chippewa National Forest and the thirty years which have passed since the sale, we find that if Mottaz's claims have merit, then she may force the government to pay her the fair market value of the land rather than to simply return the land itself.

Reversed and remanded for further proceedings consistent with this opinion.

---

**7.** In other words, Mottaz's complaint alleges that her land was sold without her consent and that she should at least receive payment for the land. If the government failed to send payment, then, until it does so, it has not acquired title to the Knickerbocker and Taylor allotments. In effect, she seeks the payment for the land which she claims she never received.

**8.** The district court found that Mottaz "received her share of the proceeds in 1955." *Mottaz v. United States*, No. 3–81–1098, slip op. at 1 (D.Minn.1983). We find nothing in the record which supports this finding, and the parties at oral argument agreed that whether or not Mottaz received payment for the land has not yet been established. The government argued that the payment records may be difficult if not impossible to recover and that this is a good reason why a statute of limitations should bar Mottaz's claim. However, in light of the government's apparent sale of Mottaz's land without her consent as allegedly required by 25 U.S.C. § 483, we find that it is reasonable to require the government at least to prove that it paid for the real estate it now claims to own. Indeed, another factor behind the *Ewert* principle is that it is generally expected that records necessary to prove title to land will be kept indefinitely unlike records concerning torts, contracts or other causes of action.