BLACK HILLS INSTITUTE OF GEOLOGICAL RESEARCH; and Black Hills Museum of Natural History Foundations, Inc., a nonprofit corporation, Plaintiffs,

v.

The UNITED STATES of America, DEPARTMENT OF JUSTICE, Defendant.

Civ. No. 92–5070.

United States District Court, D. South Dakota, W.D.

Feb. 3, 1993.

**1016**

Patrick Duffy, Bangs, McCullen, Butler, Foye & Simmons, Rapid City, SD, for plaintiffs.

Kevin V. Schieffer, U.S. Atty., Sioux Falls, SD, for defendant.

1. *Black Hills Institute of Geological Research v. United States Dept. of Justice,* 967 F.2d 1237 (8th Cir.1992) (*Black Hills I*); *Black Hills Institute of*

## MEMORANDUM OPINION

BATTEY, District Judge.

### NATURE AND PROCEDURAL HISTORY

This matter comes before the Court on cross motions for summary judgment filed pursuant to Fed.R.Civ.P. 56.

The case has had a somewhat convoluted and checkered past. It has resulted in two decisions [1] of the Eighth Circuit Court of Appeals involving motions for possession of the tyrannosaurus rex skeleton known by the nickname "Sue."

### RELEVANT FACTS

The facts upon which this Court's decision will be based are simple and straightforward. They are as follows:

1. The parties are disputing possession and ownership of a fossilized skeleton of a tyrannosaurus rex dinosaur approximately 65 million years old.

2. The fossil was taken from Indian trust land within the exterior boundaries of the Cheyenne River Sioux Tribe Reservation of South Dakota. The legal description of the land from which the fossil was taken is Section 32, Township 15 North, Range 18 East, Ziebach County, South Dakota.

3. Legal title to the land is held by the United States in trust status for Maurice A. Williams, an Indian. The instrument creating the trust status was a trust patent deed dated September 23, 1969. It is set forth fully as follows:

340 22652

### THE UNITED STATES OF AMERICA

To all to whom these presents shall come, Greeting.

WHEREAS, an Order of the authorized officer of the Bureau of Indian Affairs is now deposited in the Bureau of Land Management, directing that, pursuant to the Act of June 18, 1934 (48 Stat.

*Geological Research v. United States Dept. of Justice,* 978 F.2d 1043 (8th Cir.1992) (*Black Hills II*).

984), a trust patent issue to Maurice A. Williams, a Cheyenne River Indian, for the following described land:

Black Hills Meridian, South Dakota

    T. 14 N., R. 18 E.,

    Sec. 4, Lots 1, 2, 3, and 4, S½N½, and SW¼;

    Sec. 5, Lot 1;

    Sec. 21, NE¼

    T. 15 N., R. 18 E.,

    Sec. 32, All;

    Sec. 33, All.

The area described contains 1,959.05 acres.

NOW KNOW YE, That the UNITED STATES OF AMERICA, in consideration of the premises, hereby declares that it does and will hold the land above described (subject to all statutory provisions and restrictions) for the period of twenty-five years, in trust for the sole use and benefit of the said Indian, and at the expiration of said period the United States will convey the same by patent to the said Indian in fee, discharged of said trust and free from all charge and encumbrance whatsoever; but in the event said Indian dies before the expiration of said trust period, the Secretary of the Interior shall ascertain the legal heirs of said Indian and either issue to them in their names a patent in fee for said land, or cause said land to be sold for the benefit of said heirs as provided by law.

    IN TESTIMONY WHEREOF, the undersigned authorized officer of the Bureau of Land Management, in accordance with the provisions of the Act of June 17, 1948 (62 Stat. 476) has, in the name of the United States, caused these letters to be made Patent, and the Seal of the Bureau to be hereunto affixed.

    GIVEN under my hand, in Billings, Montana, the TWENTY-THIRD day of SEPTEMBER in the year of our Lord one thousand nine hundred and SIXTY-NINE and of the Independence of the United States the one hundred and NINETY–FOURTH.

By /s/ Eugene H. Newell
Manager, Montana Land Office.

Patent Number 40–70–0051

The instrument provides that the United States is to hold the land for a period of twenty-five years in trust for the sole use and benefit of Maurice A. Williams, and at the expiration of said period, the United States would convey the same by patent to Maurice A. Williams or his heirs in fee. The tract became known in the Bureau of Indian Affairs records as 340 (reservation number) 6309 (tract number). The document is a "trust patent" document.[2] The trust status will expire on September 23, 1994.

4. The fossil was discovered on August 12, 1990, by employees of plaintiff Black Hills Institute of Geological Research (BHIGR). It was observed with portions of the fossil protruding from beneath the surface. Excavation of the fossil was commenced by BHIGR on August 14, 1990, with the removal completed on September 1, 1990.

5. On August 27, 1990, BHIGR issued a check to Maurice Williams for $5,000, alleging that it was "for title to the fossil and the right to excavate the fossil from his land."

6. BHIGR removed the fossil without the knowledge or consent of the agencies of the United States. No permit or other permission was obtained from the United States Department of Interior or other governmental agency for either the excavation or the removal of the fossil.

### ISSUE

The ultimate issue is whether BHIGR obtained ownership to the fossil while the land from which it was excavated was held by the United States in its trust capacity.

---

**2.** The land index of the Bureau of Indian Affairs listed "trust patent" as a type of document referring to this instrument and distinguished it from other types of documents such as restricted fee patent, deed to nontrust status, deed to restricted status, deed to trust status, fee patent, mortgages, leases, and other BIA designations.

## DISCUSSION

### I

### COURT'S JURISDICTION

The Court sua sponte raised the issue of its jurisdiction[3] to determine ownership of the fossil based upon the changing posture of the pleadings. The complaint filed May 22, 1992, sought to quiet title to the fossil under 28 U.S.C. § 2409a(a) (Quiet Title Act).[4] The Black Hills Museum of Natural History Foundation, Inc., a nonprofit corporation (created by the officers of BHIGR), was added as party plaintiff on May 26, 1992. Following the decision in *Black Hills I* on June 26, 1992, (finding the Court has anomalous jurisdiction to determine temporary custody), plaintiffs on July 31, 1992, filed a second amended complaint urging the Court to exercise this general equitable jurisdiction and its federal question jurisdiction (28 U.S.C. § 1331).[5]

The Court ordered the parties to submit an appropriate memorandum of law addressing the applicability of 28 U.S.C. § 2409a(a) and the cases of *Carlson v. Tulalip Tribes of Washington*, 510 F.2d 1337 (9th Cir.1975) and *State of Florida, Dep't of Business Regulation v. United States Dep't of Interior*, 768 F.2d 1248, 1254 (11th Cir.1985).

In their memorandum of law, plaintiffs urge the Court that its "anomalous jurisdiction" which it had in the posture of determining temporary custody should also apply on the issue of permanent ownership. Plaintiffs state, "But Plaintiffs have, with the filing of a second amended complaint, cast this action solely as one for the return of personal property to which Plaintiffs have a superior *possessory* right to that of the Government." (Docket # 115). Plaintiffs further urge that "Plaintiffs have not sought a determination under 2409a(a) to 'quiet title' to the fossil, ..." By this amendment plaintiffs have abandoned any right of action under that statute.

There is a basic legal difference between exercising anomalous jurisdiction for the purpose of determining temporary custody (as the Court did in *Black Hills I*) and exercising anomalous jurisdiction for the purpose of determining the permanent possessory or ownership rights to the fossil. A permanent possessory right to the fossil is subsumed within the context of ownership. It is axiomatic that one cannot assert permanent possession as against the rightful owner absent a contract or agreement providing otherwise. The Court must therefore decide the issue of ownership.

▮▮▮ This issue involves the application and interpretation of various federal statutes concerning Indian trust lands. It is on this basis that the Court finds it has federal question jurisdiction under 28 U.S.C. § 1331. A nonfrivolous claim of a right or remedy under a federal statute is sufficient to invoke federal question jurisdiction. *See Jackson Transit Auth. v. Local Div. 1285, Amalgamated Transit Union*, 457 U.S. 15, 21 n. 6, 102 S.Ct. 2202, 2206 n. 6, 72 L.Ed.2d 639 (1982). The statutory grant of

---

3. The Court had previously exercised its general equity jurisdiction known as "anomalous jurisdiction" to determine a temporary custodian for the dinosaur bones pending final disposition on this main action to determine ownership. *Black Hills I* at 1239. The fossil now rests temporarily at the South Dakota School of Mines and Technology. *Black Hills II* at 1044.

4. **§ 2409a Real property quiet title actions**
   (a) The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights. **This section does not apply to trust or restricted Indian lands,** nor does it apply to or affect actions which may be or could have been brought under sections 1346,

1347, 1491, or 2410 of this title, sections 7424, 7425, or 7426 of the Internal Revenue Code of 1954, as amended (26 U.S.C. 7424, 7425, and 7426), or section 208 of the Act of July 10, 1952 (43 U.S.C. 666).
(Emphasis added.)
   While the complaint did not cite this statute, it appeared that it was the only statutory basis for an action to quiet title in federal court. The statute by its very terms did not apply to trust or restricted Indian lands. This appears to be why plaintiffs abandoned this ground as supporting jurisdiction.

5. 28 U.S.C. § 1331 provides that "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

jurisdiction under 28 U.S.C. § 1331 will support claims founded upon federal common law as well as those of a statutory origin. *National Farmers Union Ins. Co. v. Crow Tribe of Indians,* 471 U.S. 845, 105 S.Ct. 2447, 2450, 85 L.Ed.2d 818 (1985).

28 U.S.C. § 2409a does not provide an independent ground for jurisdiction in this case. *See, e.g., Spaeth v. United States Secretary of Interior,* 757 F.2d 937, 942 (8th Cir.1985).

## II

## GENERAL RULES OF LEGISLATIVE INTENT AS APPLIED TO INDIANS

■ The underlying rule is that congressional intent controls. *DeCoteau v. District County Court,* 420 U.S. 425, 95 S.Ct. 1082, 43 L.Ed.2d 300 (1975). In judicial construction "doubtful expressions are to be resolved in favor of the weak and defenseless people who are the wards of the nation, dependent upon its protection in good faith." *Rosebud Sioux Tribe v. Kneip,* 430 U.S. 584, 97 S.Ct. 1361, 51 L.Ed.2d 660 (1977). (*Rosebud* was a case involving congressional intent as to disestablishment of a part of the reservation.) In divining the legislative intent it is necessary to consider the legislation in its historical context and not as if it were passed today. *Ute Indian Tribe v. Utah,* 716 F.2d 1298, 1303 (10th Cir.1983).

A sale of allotted land in violation of federal law is void and confers no right upon the wrongdoer. *Ewert v. Bluejacket,* 259 U.S. 129, 42 S.Ct. 442, 66 L.Ed. 858 (1922). An allottee may not be barred by statute of limitations or laches from bringing suit to establish that title has been retained. *Mottaz v. United States,* 753 F.2d 71 (8th Cir.) *rev'd on other grounds,* 476 U.S. 834, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1985). *Mottaz* further held that Congress has not repudiated its policy of protecting Indian land by providing that claims against the United States for title to wrongful alienation allotments are barred by statute of limitations. *Mottaz* cited the case of *Haymond v. Scheer,* 543 P.2d 541 (Okla.1975).

In *Haymond* it was held that where an Indian holds legal title to lands with restriction against alienation, the title may be transferred only under rules and regulations prescribed by the Secretary of the Interior. Indian General Allotment Act, §§ 1–5, 25 U.S.C. §§ 331–348. *Haymond* was an action to quiet title to a railroad right of way which had been alienated without the consent of the government of the United States. It involved the conveyance of an easement of way for railroad purposes. *Haymond* held that a conveyance of allotted restricted lands made in violation of a federal statute authorizing the alienation of such lands is against public policy, absolutely void, and in no manner can any right, title, or interest in such land be acquired under such conveyance. The Oklahoma Supreme Court cited *Bailey v. Banister,* 200 F.2d 683 (10th Cir.1952); *United States v. Gilbertson,* 111 F.2d 978 (7th Cir.1940); *Heckman v. United States,* 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820 (1912).

■ The General Allotment Act contemplates protection for the Indian beneficiaries along the lines afforded to the beneficiary of a spendthrift trust; trust property is simply not accessible to creditors, at least until after the trustee has delivered it, free of encumbrance, to the beneficiary. *Keechi v. United States,* 604 F.Supp. 267 (D.D.C.1984).

■ Indian lands are governed solely by federal law and, where legal title to such land is held in trust by the United States, any attempted conveyance or alienation must conform to the requirements of federal law. *Nebraska Public Power Dist. v. 100.95 Acres of Land in Thurston County,* 540 F.Supp. 592, *aff'd in part, rev'd in part,* 719 F.2d 956 (8th Cir.1982). Accordingly, alienation of restricted Indian lands may only be accomplished pursuant to congressional authorization and according to rules and regulations prescribed by the Secretary of the Interior. *Id.*

## III

## TRUST STATUS OF INDIAN LANDS

The trust deed to Maurice A. Williams was authorized by the Indian Reorganiza-

tion Act of 1934, 48 Stat. 984, codified at 25 U.S.C. §§ 461–479. The Indian Reorganization Act of 1934 (IRA) ended the previous federal policy of allotment. 25 U.S.C. § 461 provides that "On or after June 18, 1934, no land of any Indian reservation, created or set apart by treaty or agreement with the Indians, Act of Congress, Executive order, purchase, or otherwise, shall be allotted in severalty to any Indian."

Although the practice of allotment of Indian lands ceased under the IRA, nonetheless federal law continued to provide that trust patents could be issued. 25 U.S.C. § 348. The United States held the land of Maurice Williams in such trust capacity under the trust patent deed dated September 23, 1969. The terms contained within the deed provided for a restriction against alienation for twenty-five years (expiring September 23, 1994).

One practical effect of property held by the United States in trust for Maurice A. Williams was that the land was exempt from state and local taxation. *See, e.g., Leading Fire v. County of Gregory,* 89 S.D. 121, 230 N.W.2d 114 (1975); 25 U.S.C. § 465; *Lebo v. Griffith,* 42 S.D. 198, 173 N.W. 840 (S.D.1919) (the state cannot tax Indian lands that are held in trust by the United States). The IRA sharply restricted the right to alienate allotments subject to it. Felix S. Cohen, *Handbook of Federal Law* 621 n. 101 (1982).

## IV

## THE APPLICATION OF 25 U.S.C. § 483

■ 25 U.S.C. § 483 provides:

**§ 483. Sale of land by individual Indian owners**

The Secretary of the Interior, or his duly authorized representative, is authorized in his discretion, and upon application of the Indian owners, to issue patents in fee, to remove restrictions against alienation, and to approve conveyances, with respect to lands or **interests in lands** held by individual Indians under the provisions of sections [461 to 479—Indian Reorganization Act] of this title, or subchapter VIII of this chapter.

(Emphasis added.) Accordingly, if this embedded fossil was an "interest in land," then by the very terms of the statute the restriction against alienation could only be removed pursuant to the terms of the statute.

Under 25 U.S.C. § 483 Maurice Williams could not remove the restrictions against alienation contained in the trust patent, nor could he convey an interest in the land without the approval of the Secretary of the Interior. The Secretary of the Interior provided regulations to implement section 483. 25 C.F.R. Part 152—**Issuance of patents in fee, certificates of competency, removal of restrictions, and sale of certain Indian lands.**

It is undisputed that Williams did not make application to the Secretary of the Interior for a removal of the restrictions contained in the trust deed, nor did he secure approval for sale of any interest in his land to plaintiffs. Failure to do so rendered the sale null and void. *United States v. Walters,* 17 F.2d 116 (D.Minn. 1926); *Bailey v. Banister,* 200 F.2d 683 (10th Cir.1952). Plaintiffs acquired no right to either ownership or possession of the fossil. If proper application had been made, the decision of the Secretary would be subject to judicial review as with any administrative decision. *See also* Felix S. Cohen, *Handbook of Federal Law* 167, 615, 623 (1982).

Plaintiffs urge the Court to find that this embedded fossil was neither "land nor an interest in land." Their position is that Maurice Williams was entitled to enter into a contract for its excavation and removal from his trust land. The Court is unpersuaded.

25 C.F.R. provides in part:

**§ 152.22 Secretarial approval necessary to convey individual-owned trust or restricted lands or land owned by a tribe.**

*(a) Individual lands.* Trust or restricted lands, ... or any interest therein, may not be conveyed without the approval of the Secretary. Moreover, inducing an Indian to execute an instrument purporting to convey any trust land

or interest therein, or the offering of any such instrument for record, is prohibited and criminal penalties may be incurred....

**§ 152.23 Applications for sale, exchange or gift.**

Applications for the sale, exchange or gift of trust or restricted land shall be filed in the form approved by the Secretary with the agency having immediate jurisdiction over the land. Applications may be approved if, after careful examination of the circumstances in each case, the transaction appears to be clearly justified in the light of the long-range best interests of the owner or owners or as under conditions set out in § 152.25(d).

### V

### WAS THE FOSSIL AN INTEREST IN LAND?

The Court has found no case authority specifically holding that a paleontological fossil such as the fossil "Sue" embedded in the ground is an "interest in land." [6]

To address the issue of whether or not the fossil is personal or real property, the following definitions found in the South Dakota Codified Laws are helpful in the Court's analysis:

**43–1–1. Property defined.** In this code, the thing of which there may be ownership is called property.

**43–1–2. Classes of property.** Property is either:

(1) Real or immovable; or

(2) Personal or movable.

**43–1–3. Real and personal property distinguished.** Real or immovable property consists of:

(1) Land;

(2) That which is affixed to land;

(3) That which is incidental or appurtenant to land;

(4) That which is immovable by law. Every kind of property that is not real is personal.

**43–1–4. Land as solid material of earth.** Land is the solid material of the earth, whatever may be the ingredients of which it is composed, whether soil, rock, or other substance.

The Court finds that the embedded fossil was an interest in land as defined by these provisions and therefore subject to the requirements of 25 U.S.C. § 483 and the Code of Federal Regulations.

### VI

### PROTECTION OF INDIANS

The Court's finding that the embedded fossil was "land or an interest in land" and its removal subject to the rules and regulations of the Secretary of the Interior is consistent with the intent of Congress to protect Indian lands from improvident alienation. This fossil was described by witnesses in *Black Hills II* as a "priceless" paleontological find. The testimony at the evidentiary hearing in *Black Hills II* indicated that a "copy" of the fossil could be sold for $100,000 after it had been carefully preserved and curated (the process of preparing for viewing).

There are a number of statutes which indicate congressional intent to protect the Indians against acquisition of their land or interests in land. A nonexhaustive list of examples of statutes requiring approval of the Secretary of the Interior is as follows:

(1) The Secretary of the Interior is authorized to grant permission to the state or local authorities for the opening of public highways through allotted lands which have not been alienated. 25 U.S.C. § 311.

(2) Leases for farming and grazing purposes are subject to the approval of the superintendent or other officer in charge of the reservation under such rules and regulations as the Secretary may prescribe. 25 U.S.C. § 393.

(3) Allotted lands may be leased for mining purposes as may be advisable by the

---

**6.** Plaintiffs assert that the fossil, upon its severance, became personal property and thus not subject to the restriction against alienation. The Court believes such a position misses the point. The status of the fossil and the law applicable to it must be viewed *before* severance and not *after* severance.

Secretary of the Interior under the rules and regulations. 25 U.S.C. § 396.

(4) The Secretary of the Interior may approve leases for oil, gas, or other mining purposes covering any restricted Indian lands, tribal or allotted. 25 U.S.C. § 396e.

(5) With respect to the general necessity to obtain consent to alienation, 25 U.S.C. § 392 provides as follows:

25 U.S.C. § 392. **Consent to or approval of alienation of allotments by Secretary of Interior**

Whenever, in any law or treaty or in any patent issued to Indian allottees for lands in severalty pursuant to such law or treaty, there appears a provision to the effect that the lands so allotted cannot be alienated without the consent of the President of the United States, the Secretary of the Interior shall have full power and authority to consent to or approve of the alienation of such allotments, in whole or in part, in his discretion, by deed, will, lease, or any other form of conveyance, ...

(6) Finally, with respect to the claim of a non-Indian about the right to property in which an Indian may be a party on one side, the burden of proof rests upon the non-Indian whenever the Indian shall make out a presumption of title from the fact of previous possession or ownership. 25 U.S.C. § 194.

### CONCLUSION

The Maurice Williams land is trust land, held by the United States in trust status. By the terms of the trust patent and the laws and regulations of the United States, an alienation by sale of an interest in land must be with the consent of the Secretary of the Interior. Maurice Williams did not make application for consent to the removal of the embedded fossil. BHIGR was equally responsible to insure that consent was obtained in compliance with federal law. Without such consent, the attempted sale of the fossil "Sue" embedded within the land is null and void. BHIGR obtained

no legal right, title, or interest in the fossil as severed since the severance itself was contrary to the law. It would have been a relatively simple matter to have applied for the removal of the alienation restraint. Had there been such an application and Secretarial approval, all these months of contention could have been avoided.[7] Plaintiffs must assume much of the fault caused by their failure to conform their conduct to the federal laws and regulations. Plaintiffs should have investigated the status of the land involved. They ran the risk of this unlawful taking of the fossil from Indian land by not having done so.

Judgment of dismissal of plaintiffs' complaint is entered contemporaneously with the filing of this memorandum opinion.

### JUDGMENT

In accordance with the memorandum opinion filed this date, it is hereby

ORDERED that judgment is entered in favor of defendant and against plaintiffs. Plaintiffs' complaint is dismissed.

7. The United States and its representatives have been the subject of much public and private vilification for the action in reclaiming the possession of this fossil. The fact that the government was entitled to possession always seems to be overlooked.